**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

CARL DUMAS, JR.,

Plaintiff,

v.

NORFOLK SOUTHERN CORPORATION,

Defendant.

Case No. 2:25-cv-521

**OPINION & ORDER**

Defendant Norfolk Southern Corporation seeks summary judgment (ECF No. 42) on four claims brought by its employee, Carl Dumas, Jr., the plaintiff: (1) disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101; (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*; (3) age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.*; and (4) retaliation in violation of Title VII, the ADA, and the ADEA.

Because the plaintiff does not establish that, on account of his disability, race, or age, Norfolk Southern failed to promote or hire him, Norfolk Southern is entitled to judgment as a matter of law.

## I. BACKGROUND

The plaintiff alleges he was discriminated against based on his disability, race, and age because he was first dismissed from his position and later rejected from other

Norfolk Southern management positions. To the plaintiff, his rejection from those positions constituted retaliation because he complained to senior management about being treated unfairly.

The plaintiff filed an EEOC charge on December 26, 2024. In that charge, he alleges that his "age, disability, and/or race were factors" in his dismissal from the company and that Norfolk Southern rejected his applications for 18 positions, while a white candidate with less experience than the plaintiff was hired from outside the company without completing the management training program. ECF No. 1-2 at 1–2.

The following undisputed facts are sufficient for the Court to reach its decision:[1]

1. The plaintiff is a Black male born in 1974. ECF No. 43 at 7; ECF No. 50 at 5 ¶¶ 1–2.

2. He was first hired by Norfolk Southern on March 16, 2000, as a conductor. ECF No. 43 SOF ¶ 1; ECF No. 43-1 at 2.

[1] Rather than identifying items in Norfolk Southern's proposed statement of undisputed facts with which he disagrees, the plaintiff submitted alternative statements of undisputed and material facts. ECF No. 50 at 5–11. That is inconsistent with the way courts in this district routinely apply E.D. Va. Civ. R. 56(B). *See e.g.*, *Nyimpha v. Ross*, No. 1:19-cv-258, 2020 WL 819839, at *1 (E.D. Va. Feb. 19, 2020) ("The nonmovant must respond to each enumerated fact and either admit or contest by citing to record evidence."); *see also Nifong v. SOC, LLC*, 234 F. Supp. 3d 739, 744 (E.D. Va. 2017) (alternative statement of undisputed facts "serve[d] to undermine Local Rule 56(B) by frustrating the ability to determine which material facts are genuinely in dispute"). Accordingly, after reviewing the plaintiff's alternative presentation, the Court consider these facts, as presented by Norfolk Southern, to be undisputed.

3. He has no college degree. ECF No. 43 SOF ¶ 3; ECF No. 50 at 7 ¶ 1.

4. From July 2002 to January 2024, the plaintiff held various positions, including positions in management, with Norfolk Southern. ECF No. 43 SOF ¶ 2; ECF No. 43-1 at 2.

5. Norfolk Southern maintains a health services department that operates separately from the business side of the company but provides certain health clearances before employees can start "safety-sensitive" positions. ECF No. 43-4 at 44:16–47:22; ECF No. 23 SOF ¶ 7.

6. In 2004, the plaintiff was diagnosed with a brain tumor, and after he notified the company, Norfolk Southern granted him leave for medical treatment. ECF No. 43 SOF ¶¶ 7–8; ECF No. 50 at 5 ¶ 3; *see* ECF No. 43-3 at 2–3, 5 (medical leave request certification and form); ECF No. 43-5 at 2 (medical leave approval).

7. Norfolk Southern Health Services last received information about the plaintiff's brain tumor and other health conditions in 2016, when the plaintiff was cleared to return to work. ECF No. 43 ¶ 9; ECF No. 43-6 at 2 (notification that the plaintiff completed treatment); ECF No. 50-2 at 6–7 (end of treatment note).

8. On January 31, 2024, Norfolk Southern dismissed the plaintiff from his position as an assistant division superintendent due to restructuring of his respective department and offered him a severance package. ECF No. 43 SOF ¶¶ 13–14; ECF No. 50 at 5 ¶ 8; ECF No. 43-7 at 2 (letter notifying the plaintiff of his dismissal); *see* ECF No. 50-6 at 1–7 (separation agreement).

9. That same day, the plaintiff emailed Norfolk Southern's Vice President of Transportation asking why "[he] was not offered a downgraded position as some of [his] other colleagues [were]." ECF No. 43 SOF ¶ 15; ECF No. 43-7 at 3.

10. The plaintiff declined the severance package and instead opted to take a union position as a Yardmaster, effective February 12, 2024. ECF No. 43 SOF ¶¶ 16–17; ECF No. 50 at 6 ¶ 10; ECF No. 43-1 at 2.

11. From February 2024 through December 2024, the plaintiff applied to 21 management-level positions with Norfolk Southern. ECF No. 43 SOF ¶¶ 19–20; ECF No. 43-8 ¶ 4; *see* ECF No. 50 at 6 ¶ 17; ECF No. 50-8 at 1–5.[2]

12. Four of the candidates who were hired for the positions to which the plaintiff applied were Black, African American, or multiracial, and five of those candidates were close in age to the plaintiff. ECF No. 43 SOF ¶¶ 27–28; ECF No. 43-8 at 5–9.

13. On September 29, 2024, the plaintiff emailed Norfolk Southern's CEO and COO requesting "insights" as to "why [he] was treated differently from [his] colleagues and why [he] was not offered the same opportunities to remain in a" management position. ECF No. 43 SOF ¶ 31; ECF No. 43-12 at 3–4.

[2] The plaintiff's opposition memorandum (ECF No. 50) references positions that he applied to after December 2024 up until March 2026 as well as the two subsequent EEOC charges he filed in November 2025 and April 2026. ECF No. 50 at 6 ¶ 17; *id.* at 7 ¶¶ 19, 21. Those positions and charges were not raised in the plaintiff's amended complaint (ECF No. 20). The Court therefore only considers the positions for which the plaintiff applied, and the EEOC charge filed, prior to the amended complaint.

14. After the plaintiff met with a member of human resources to discuss his concerns, Norfolk Southern's assistant vice president (AVP) of human resources emailed the plaintiff "recommend[ing] [he] apply to Transportation's Management Trainee program" "[a]s a path back to management." ECF No. 43 SOF ¶ 34; ECF No. 43-12 at 6; *see* ECF No. 50 at 6 ¶ 14.

15. The AVP's email contained a hyperlink "to apply" to the management training program. ECF No. 43 SOF ¶ 35; ECF No. 43-14 at 3.

16. Norfolk Southern gives hiring preference to applicants who complete the management training program. ECF No. 43 SOF ¶ 37; ECF No. 43–8 ¶ 18.

17. Two of the applicants who were selected for the positions for which the plaintiff applied were selected because they had completed the management training program. ECF No. 43 SOF ¶ 38; ECF No. 43-8 at 5–6.

18. The plaintiff did not apply for the management training program before he filed a charge with the EEOC. ECF No. 43 SOF ¶¶ 36, 43; ECF No. 50 at 6 ¶ 16.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

A court may "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do that, the movant must support their assertions as to undisputed facts by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

If the moving party is successful in the first instance, then the burden "shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial." *Gnik*, 93 F.4th at 200 (citation and quotation marks omitted); *see Celotex*, 477 U.S. at 324. "The facts and all justifiable inferences arising therefrom must be viewed in the light most favorable to the non-movant." *Gnik*, 93 F.4th at 200 (citation omitted). However, if the non-movant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court is not required to consider any materials in the record outside of what the parties include with their briefing. Fed. R. Civ. P. 56(c)(3).

**B. EEOC's Statutory Scheme**

When an employee seeks to challenge an employment practice by their employer, the employee must first file a charge with the EEOC. 42 U.S.C. § 2000e-5(b). Because Virginia maintains a state deferral agency, an employee challenging a practice by an employer in Virginia has 300 days to file a charge with the EEOC. § 2000e-5(e)(1); *see Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). Employees may only "file a charge to cover discrete acts that 'occurred' within the [statutory] time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). If the statutory period elapses between the discriminatory practice and the filing of the EEOC charge, the employee's claims are barred from relief. *Id.* at 109.

**C. Title VII Discrimination and Retaliation**

Title VII outlaws employment discrimination based on race, color, religion, sex, or national origin and prohibits employers from retaliating against employees for complaining about unlawful discrimination. 42 U.S.C. §§ 2000e-2(a)(1) (discrimination), 2000e-3(a) (retaliation). A plaintiff may prove a discrimination or retaliation claim through direct or indirect evidence of intentional discrimination, or through circumstantial evidence under the three-step scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308–09 (2025) (discrimination); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (retaliation).

At the first step, the plaintiff bears the "initial burden" of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff

clears that hurdle, then the employer may articulate a legitimate, nondiscriminatory reason for the alleged adverse action. *Id.* Finally, if the employer puts forward an innocent rationale, the plaintiff may respond by showing that the proffered justification was a pretext for discrimination. *Id.* at 804.

Courts within the Fourth Circuit analyze ADA and ADEA claims under Title VII's framework. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995) (ADA); *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 901 (4th Cir. 2024) (ADEA).

## III. ANALYSIS

### A. Discrimination

The plaintiff's amended complaint alleges that he was subjected to unlawful discrimination on the basis of his race, age, and disability when Norfolk Southern dismissed him from his position in January 2024, by failing to promote or hire him thereafter, and by requiring him to participate in a management training program that not all employees selected for management positions participated in. ECF No. 20 ¶¶ 103, 107, 114, 120, 130, 131, 141; *see* ECF No. 1-2 at 1–2.

Norfolk Southern argues that the plaintiff's claims as related to his dismissal are barred because the plaintiff's EEOC charge was brought after the statutory period had lapsed. ECF No. 43 at 17–18. Failure to promote, refusal to hire, and termination—all adverse employment actions the plaintiff alleges—are identifiable discrete acts. *Morgan*, 536 U.S. at 114. The plaintiff filed an EEOC charge related to those acts on December 26, 2024. ECF No. 1-2 at 1–2. The statutory period for that charge would permit inclusion of acts from March 1, 2024, until the date the charge

was filed. *See* § 2000e-5(e)(1). Because the plaintiff was separated from the company on January 31, 2024, his claims regarding that separation are barred. *Morgan*, 536 U.S. at 109. However, the plaintiff applied to all of the positions underlying his failure to promote and refusal to hire claims after March 1, 2024, so those claims are not time-barred. *See* ECF No. 43-8 at 5–9; ECF No. 50-8 at 1–5. In other words, given that the plaintiff's dismissal occurred outside of the allotted statutory period, only his failure to promote or hire claims may go forward.[3]

[3] The plaintiff also attempts to cast required participation in a management training program as an adverse employment action, alleging that he was required to participate in the program but others who obtained management positions were not. In the context of a discrimination claim, an adverse employment action is an act by an employer that "adversely affects the terms, conditions, or benefits of [one's] employment." *Von Gunten v. Maryland*, 243 F.3d 858, 869–70 (4th Cir. 2001) *abrogated on different grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citation omitted). Adverse actions usually include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999).

Required participation in the management training program while others were not required to do so could be considered a reduced opportunity for promotion, and thus, an adverse action. But assuming without deciding that this training program was an unwritten requirement that the plaintiff was held to in order to obtain a management position, he otherwise fails to provide any evidence that he was required to participate in the program because of his disability, race, or age. Rather, the record is devoid of any evidence that those who were hired without participating in the management training program had any disabilities. And for the plaintiff's race and age discrimination claims, the same is true. The four Black, African American, or multiracial candidates who were hired did not complete the management training program. ECF No. 43-8 at 5–8. The two candidates who completed the management training program and were subsequently hired are substantially younger than the plaintiff but, as discussed below, the plaintiff's race and age discrimination claims fail regardless because he cannot show that Norfolk Southern's nondiscriminatory justification is mere pretext for discrimination. *See* Part III.A.iii *infra*.

### *i. Disability Discrimination*

To establish a prima facie case of disability discrimination, a plaintiff must allege that "(1) [they are] disabled; (2) [they are] otherwise qualified for the position; and (3) [they] suffered an adverse employment action solely on the basis of the[ir] disability." *Perry v. Computer Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011) (unpublished) (citation omitted).

The plaintiff alleges that Norfolk Southern's failure to promote or hire him after his dismissal while being aware of his disability creates a reasonable inference of discrimination. ECF No. 50 at 15–16. Norfolk Southern argues it is entitled to judgment as a matter of law on this claim because the plaintiff provides no evidence that anyone in charge of making employment decisions was aware of his disability nor does any evidence establish that his disability was a but-for cause of any adverse employment action. ECF No. 43 at 20–21.

It is undisputed that the plaintiff is disabled because he has a brain tumor. *See* ECF No. 43 SOF ¶¶ 7–8; ECF No. 50 at 5 ¶ 3; ECF No. 43-3 at 2–3, 5 (medical leave request certification and form); ECF No. 43-5 at 2 (medical leave approval). But he cannot establish a prima facie case of disability discrimination because no reasonable jury could conclude that Norfolk Southern failed to promote or hire him because of that disability.

For an employer to be liable for discrimination under the ADA, the employer must be aware of an individual's disability. *Simmons v. UM Cap. Region Health, Inc.*, No. 25-1430, 2026 WL 2086105, at *4 (4th Cir. July 20, 2026) (unpublished) (citation

omitted). Norfolk Southern maintains a health services department that operates separately from the business side of the company but provides certain health clearances before employees can start "safety-sensitive" positions. ECF No. 43-4 at 44:16-47:22; ECF No. 23 SOF ¶ 7. The plaintiff admits that "medical documentation [is kept] separate" but otherwise only references a medical qualification form that states the "Norfolk Southern Chief Medical Officer will determine the examinee's medical qualification for work" to argue that those in charge of hiring decisions were aware of his disability status. ECF No. 50 at 8 ¶ 5; ECF No. 50-2 at 4. According to Norfolk Southern's Chief Medical Officer, the Health Services department only provides those in charge of hiring with clearance for an individual to hold the respective position (or notifies hiring authorities that the applicant is not cleared). ECF No. 43-4 at 46:14–47:22. The plaintiff asserts that Norfolk Southern knew of his disability but does not indicate who he informed of that disability outside of the health services department. ECF No. 50 at 5 ¶ 5; ECF No. 50 at 8 ¶ 6; ECF No. 20 ¶ 104.

Without any additional evidence, the plaintiff fails to raise a genuine dispute as to whether those in charge of hiring at Norfolk Southern had any knowledge of his disability and thus fails to make out a prima facie case of disability discrimination.

***ii. Race and Age Discrimination***

*a. Prima Facie Case*

Because the plaintiff puts on no direct or indirect evidence of intentional race or age discrimination, he must prove his claims through circumstantial evidence under the *McDonnell Douglas* framework. To establish a prima facie case of

discrimination based on a failure to promote or hire, a Title VII plaintiff must show "that (1) [they are] a member of a protected class; (2) [their] employer had an open position for which [they] applied or sought to apply; (3) [they were] qualified for the position; and (4) [they were] rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

The plaintiff is a member of a protected class on two accounts—he is Black and over the age of 40. *See* 42 U.S.C. § 2000(e); 29 U.S.C. § 623(a)(1). And of the 21 available positions for which the plaintiff applied, only 18 of those positions were ultimately filled. ECF No. 43-8 at 5–9. The plaintiff asserts that he was qualified to hold each of the positions he applied to. *See* ECF No. 50 at 9 ¶ 10; ECF No. 50-11 at 10:4–10:7. But his general belief that he was qualified, without more, does not demonstrate that he was qualified for each of the positions. Norfolk Southern provided that the plaintiff was automatically disqualified from four positions because he lacked the requisite college education or work experience. ECF No. 43-8 at 6–9. Therefore, the record only supports that the plaintiff could have met the qualifications for 14 of the 18 positions.

Proving a prima facie case of discrimination is "not onerous," but the plaintiff must still show that he "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253. Norfolk Southern argues that the plaintiff cannot show that he was rejected under such circumstances

because it hired other individuals of the same race and those of similar ages to fill those positions. ECF No. 43 at 23; ECF No. 43-8 at 5–9.

Typically, to satisfy the fourth element, a plaintiff must show that the position was filled by someone not a member of their protected class. *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998). Replacement by a member of one's protected class, however, "does not always give rise to an inference of non-discrimination." *Miles v. Dell, Inc.*, 429 F.3d 480, 488 (4th Cir. 2005). There may be circumstances where an employer hires within the plaintiff's protected class to "disguise its act of discrimination toward the plaintiff." *Brown*, 159 F.3d at 905. And other times, when a plaintiff is replaced by someone who is "substantially younger" yet still over the age of 40, an inference of age discrimination can still arise. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996).

Here, of the 14 positions that the plaintiff qualified for, nine were filled by white individuals and nine were filled by people substantially younger than the plaintiff. ECF No. 43-8 at 5–9. Because the plaintiff's burden is not onerous, he can make out a prima facie case of both race and age discrimination.

*b. Legitimate, Non-Discriminatory Reason*

The burden therefore shifts to Norfolk Southern to establish it had a legitimate, non-discriminatory reason for failing to promote or hire the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Norfolk Southern's burden "is one of production, not persuasion" and does not require a credibility assessment. *Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 174 (4th Cir. 2024) (citation omitted).

Relative employee qualifications are a valid, non-discriminatory reason for any adverse employment decision. *Evans*, 80 F.3d at 960. Norfolk Southern has articulated a legitimate non-discriminatory reason for declining to promote or hire the plaintiff: All selected candidates were more qualified for their respective positions than the plaintiff. ECF No. 43 at 22; ECF No. 43-8 at 5–9.

*c. Pretext*

After an employer offers its explanation, the plaintiff bears the burden of showing that his employer's nondiscriminatory reasons are not true and rather serve as pretext for intentional discrimination. *Anderson*, 117 F.4th at 175. To overcome his burden, "the plaintiff must establish that [he] was the better qualified candidate for [each of] the position[s] sought." *Evans*, 80 F.3d at 960 (citation omitted).

The plaintiff provides no evidence that he was the better qualified candidate for any of the fourteen positions for which he applied. He identifies two comparators, Frank Gilly and Ryan Ernst, who he alleges are white, nondisabled, and, in Ernst's case, much younger, that were hired for two of the positions for which the plaintiff applied. ECF No. 50 at 9 ¶ 13; ECF No. 50 at 10 ¶¶ 16– 18; ECF No. 50-15 1:19–1:22. The plaintiff argues that he was subject to discrimination because those comparators "are outside of his protected classes" and "do not have [the plaintiff's] level of managerial experience or leadership skill set." ECF No. 50 at 14–15. But the plaintiff offers no evidence of the experience that Gilly, Ernst, or any other employee who was hired for one of these positions had, let alone how the managerial and leadership experience of those individuals compares to the plaintiff's experience.

Norfolk Southern provided evidence of the specific criteria the selectees for each position met. *See* ECF No. 43-8 at 5–9. The plaintiff's assertion alone cannot create a genuine dispute as to whether Norfolk Southern's stated reason for failing to promote or hire the plaintiff was pretext for discrimination.

**B. Retaliation**

To establish a retaliation claim under Title VII, the ADEA, or the ADA, a plaintiff must show "(1) that [they] engaged in protected activity; (2) that [their employer] took a material adverse employment action against [them], and (3) that a causal connection existed between the protected activity and the adverse action." *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (Title VII); *Buchhagen v. ICF Int'l*, Inc., 650 F. App'x 824, 828 (4th Cir. 2016) (unpublished) (ADEA); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (ADA).

The plaintiff alleges that he engaged in protected activity first when he expressed concerns about being laid off without an opportunity for promotion, next when he told Norfolk Southern's CEO that he was being treated unfairly, and again when he raised those same concerns to an AVP of human resources. ECF No. 20 ¶¶ 136, 138–39. Since that activity, the plaintiff alleges that he has been denied opportunities for advancement. *Id.* ¶ 140. However, none of the activities the plaintiff puts forward constitute protected activity that can establish a prima facie case of retaliation.[4]

[4] The plaintiff certainly took an action protected by the participation clause when he filed the relevant EEOC charge here, but he does not plead that this charge was protected activity that led to retaliation. Regardless, the failure to promote or hire

The Fourth Circuit permits district courts expansive latitude in determining what may constitute "oppositional conduct, recognizing that it encompasses . . . voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017) (unpublished) (citation and quotation marks omitted). But ultimately, an "employee must complain about activity that constitutes unlawful discrimination under Title VII, rather than about unfair treatment generally." *Conyers v. Virginia Hous. Dev. Auth.*, 927 F. Supp. 2d 285, 295 (E.D. Va. 2013), *aff'd*, 533 F. App'x 342 (4th Cir. 2013) (unpublished). "[A]n employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) (unpublished) (citation omitted).

In all three instances, the plaintiff only expressed that he felt unfairly treated, not that he had been subjected to unlawful discrimination. When he first reached out to Norfolk Southern's VP of Transportation, he asked why "[he] was not offered a downgraded position as some of [his] other colleagues [were]." ECF No. 43 SOF ¶ 15; ECF No. 43-7 at 3. In another email that day, he contacted another member of the human resources department, and stated he knew "some of [his] colleagues were

---

theory that underlies his retaliation claim only pertains to jobs he applied for up until the EEOC charge was filed. ECF No. 20 ¶ 110; *see* ECF No. 43-8 at 9 (last job application was submitted December 8, 2024). He does not allege that he was denied career advancement after December 2024, and failed to amend his complaint to loop in those pending EEOC charges. *See* ECF No. 36. Therefore, the EEOC charge does not serve as a protected activity for purposes of the plaintiff's retaliation claim.

given options to accept other positions" and asked "why [he] was not afforded the same option." ECF No. 43-7 at 5. At no point in these messages to Norfolk Southern management did the plaintiff oppose discriminatory conduct.

On September 29, 2024, the plaintiff emailed Norfolk Southern's CEO and COO requesting "insight" as to "why [he] was treated differently from [his] colleagues and why [he] was not offered the same opportunities to remain in a" management position. ECF No. 43 SOF ¶ 31; ECF No. 43-12 at 3–4. Again, there was no reason for Norfolk Southern to take the plaintiff's complaints as opposing discriminatory conduct, as compared to complaining about unfair treatment generally.

The plaintiff also emailed the AVP indicating that he "believe[d] that [his] termination was heavily influenced by subjective decisions" and that there was "apparent inconsistency in how individuals were treated throughout this process." ECF No. 43-12 at 7. He expressed that his ultimate "objective [was] to be treated with fairness and equity" and for the human resources team "to consider extending to [the plaintiff] the same opportunities and benefits that were offered to [his] colleagues." *Id.* The Court acknowledges that these statements allude to nondescript instances of inequity and unfair treatment, but those statements are not enough for a reasonable jury to conclude that Norfolk Southern was on notice that the unfair treatment the plaintiff spoke of dealt with his disability, race, or age. Like the other two alleged instances of protected activity raised by the plaintiff, the plaintiff only alleges unfair treatment generally, not unlawful discrimination.

The plaintiff argues that he "has suffered continuing action in the form of non-selection for several management level positions since he raised his initial concerns about his termination." ECF No. 50 at 17. But the record is devoid of any evidence that hiring authorities knew that the plaintiff had raised any concerns with the CEO or members of the human resources department. Because the plaintiff fails to allege that he engaged in any protected activity under Title VII as it relates to his claims, the Court need not analyze the other elements of his retaliation claim.

## IV. CONCLUSION

Accordingly, Defendant Norfolk Southern's motion for summary judgment (ECF No. 42) is **GRANTED**.[5]

The Clerk is **DIRECTED** to enter judgment in favor of Norfolk Southern and to close this case.

**IT IS SO ORDERED**.

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
October 9, 2026

[5] Though the defendant bears the burden of proving that it is owed judgment as a matter of law, the plaintiff carries the ultimate burden in the case and may not rely on "the mere pleadings themselves." *See Celotex*, 477 U.S. at 324. The Court's judgment in favor of Norfolk Southern rests in large part on the plaintiff's failure to submit any relevant evidence or respond to any of the substantive arguments raised by Norfolk Southern. In opposing summary judgment, the plaintiff only rearticulates the allegations raised in his complaint without any effort whatsoever to meet his burden under *McDonnell Douglas*. But this case is well past the 12(b)(6) stage, and more is required. As a result, the plaintiff has greatly disadvantaged himself from any meaningful analysis of his claims.